IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**THOMAS AQUILA, II,**                  Case No. 1:18 CV 1118

    Petitioner,                        Judge Christopher A. Boyko

    v.                                 Magistrate Judge James R. Knepp, II

**WARDEN LASHANN EPPINGER,**

    Respondent.                  REPORT AND RECOMMENDATION

### INTRODUCTION

*Pro se* Petitioner Thomas Aquila, II ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden LaShann Eppinger ("Respondent") filed a Motion to Dismiss (Doc. 7) and Petitioner filed an Opposition (Doc. 8). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Doc. 3). For the reasons discussed below, the undersigned recommends the Petition be dismissed as time-barred.

### PROCEDURAL HISTORY

State Court Conviction & Subsequent Proceedings

In August 1997, a Cuyahoga County Grand Jury indicted Petitioner on one count of aggravated murder in violation of Ohio Revised Code § 2903.01 (Count 1), and one count of gross abuse of a corpse in violation of Ohio Revised Code § 2927.01 (Count 2). (Ex. 1, Doc. 7-1, at 3-4). Petitioner initially pleaded not guilty through counsel. *See* Ex. 22, Doc. 7-1, at 150. In November 1997, Petitioner entered a guilty plea to Count 1 (amended to the lesser included offense of murder in violation of Ohio Revised Code § 2903.02); the prosecution nolled Count 2. (Ex. 2,

Doc. 7-1, at 5). On November 7, 1997, the trial court accepted the plea, and imposed a prison term of life without the possibility of parole for fifteen years. *Id.*[1] Petitioner did not appeal. *See* Ex. 22, Doc. 7-1, at 149 (docket sheet).

In February 2008, the trial court issued a journal entry noting it advised Petitioner he was subject to a mandatory five years of post-release control at the November 1997 sentencing, but failed to journalize the advisement. (Ex. 3, Doc. 7-1, at 6).

In April 2012, the trial court issued a journal entry noting Petitioner was scheduled for a parole hearing. (Ex. 4, Doc. 7-1, at 7). The trial court stated it had "imposed sentence after due consideration of all relevant factors and opposes any reduction or modification of sentence by the Ohio Parole Board from that which was imposed." *Id.*

Post-conviction Relief

In September 2015, Petitioner filed a *pro se* motion to withdraw his guilty plea. (Ex. 5, Doc. 7-1, at 8-15). He alleged he was not advised by the trial court of the maximum penalties for his offense, specifically that the trial court incorrectly imposed a term of post-release control inapplicable to his conviction. *Id.* He also argued the trial court's April 2012 journal entry effectively nullified any chance he had to be paroled. *Id.* at 11-12. The state filed a brief in opposition. (Ex. 6, Doc. 7-1, at 40-44). In November 2015, Petitioner, through counsel, filed a motion to correct illegal sentence. (Ex. 7, Doc. 7-1, at 45-47). In it, he alleged that post-release control was inapplicable to his conviction, and as such he was entitled to a hearing to correct his sentence. *Id.* The trial court held a hearing and granted Petitioner's motion to correct illegal sentence. *See* Ex. 8, Doc. 7-1, at 71. The court filed a *nunc pro tunc* entry "to reflect the removal

---

1. This journal entry was docketed on November 13, 1997. *See* Ex. 2, Doc. 7-1, at 5.

of the advisement of postrelease control". *Id.* That same day, the court filed another entry denying Petitioner's motion to withdraw guilty plea. (Ex. 10, Doc. 7-1, at 73).[2]

Through counsel, Petitioner filed a timely appeal of the denial of his motion to withdraw guilty plea. (Ex. 11, Doc. 7-1, at 74). In his brief, he asserted a single assignment of error: "The trial court erred in denying Appellant's Motion to Withdraw Guilty Plea because Appellant has suffered a manifest injustice." (Ex. 12, Doc. 7-1, at 80).[3] The state filed a brief in response. (Ex. 13, Doc. 7-1, at 92-103). On July 28, 2016, the Ohio Eighth District Court of Appeals affirmed the judgment of the trial court. (Ex. 14, Doc. 7-1, at 104-10). On August 3, 2016, Petitioner filed a *pro se* motion for reconsideration (Ex. 15, Doc. 7-1, at 111-13), which the state opposed (Ex. 16, Doc. 7-1, at 115-18). The appellate court denied Petitioner's motion on August 16, 2016. (Ex. 17, Doc. 7-1, at 120).

Through counsel, Petitioner filed a timely appeal to the Ohio Supreme Court. (Ex. 18, Doc. 7-1, at 121-22). In his memorandum in support of jurisdiction, Petitioner raised a single proposition of law:

> A defendant's plea is invalid when he has been induced to enter a plea based on the potential for parole and the trial court issues a blanket opposition to parole, thus denying a meaningful opportunity for parole and effectively modifying the sentence originally imposed.

(Ex. 19, Doc. 7-1, at 125). The state filed a waiver of memorandum in response (Ex. 20, Doc. 7-1, at 145), and on April 19, 2017, the Ohio Supreme Court declined to accept jurisdiction pursuant to Ohio Supreme Court Practice Rule 7.08(B)(4). (Ex. 21, Doc. 7-1, at 146).

---

2. The court also filed a second *nunc pro tunc* entry to correctly state that Petitioner's murder conviction was an unclassified felony, not an F-1 felony. (Ex. 9, Doc. 7-1, at 72).

3. Petitioner listed the "Issue Presented" as: "Whether the trial court breached the plea agreement by sending an order to the Adult Parole Authority, opposing parole, and if so, whether Mr. Aquila suffered a manifest injustice." (Ex. 12, Doc. 7-1, at 81).

3

#### FEDERAL HABEAS CORPUS

On May 7, 2018[4], Petitioner filed a Petition seeking a writ of habeas corpus with this court. (Doc. 1). In it, he raises a single ground for relief:

> **GROUND ONE:** Petitioner was deprived of due process of law where the breach of a plea agreement rendered the plea unknowing, involuntary and unintelligent.
>
> **Supporting facts:** Petitioner's Fifth Amendment Right to Due Process was violated where the trial court removed parole eligibility from his sentence, which was part of his plea agreement, fifteen years after entry of the plea by issuing a Court Order directing the Parole Board not to consider parole.

(Doc. 1, at 5). In response, Respondent filed a Motion to Dismiss, contending the Petition is untimely. (Doc. 7). Petitioner filed an opposition, arguing statutory and equitable tolling render the Petition timely. (Doc. 8).

#### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a

---

4. Pursuant to the federal prison mailbox rule, a *pro se* prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)). *See* Doc. 1, at 10 (representing Petition was placed in the prison mailing system on May 7, 2018).

court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## DISCUSSION

Respondent asserts the Petition must be dismissed as untimely. (Doc. 7, at 5-8). Petitioner responds that statutory and equitable tolling render the Petition timely. (Doc. 8, at 1-4). For the reasons discussed below, the undersigned recommends the Petition be dismissed as time-barred.

<u>Statute of Limitations</u>

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") created a one-year limitations period for habeas petitions brought by individuals challenging their state court convictions. 28 U.S.C. § 2244(d). Under § 2244(d)(1), the limitations period begins to run from the latest of four events:

    (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

***§ 2244(d)(1)(A)***

Cases become final for purposes of § 2244(d)(1)(A) when the time to file an appeal has expired. *Lawrence v. Florida*, 549 U.S. 327, 333 (2007). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petition's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). Here, Petitioner's conviction became final on December 8, 1997—the first business day after expiration of the 30-day period for filing an appeal under Ohio Appellate Rule 4(A). *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459-60 (6th Cir. 2012) (citing *Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2011)). Under § 2244(d)(1)(A), the statute of limitations began to run the following day—December 9, 1997—and expired one year later, on December 9, 1998. *See* Fed R. Civ. P. 6(a); *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000). Thus, absent tolling or a different start date, the Petition—filed May 7, 2018—is time-barred.

In support of his argument that his Petition is timely, Petitioner cites *In re Stansell*, 828 F.3d 412 (6th Cir. 2016). There, the Sixth Circuit held that a resentencing to impose an improperly-excluded period of post-release control was an intervening judgment permitting the petitioner to raise challenges to "his (undisturbed) conviction), his (undisturbed) term of incarceration, and his (new) term of post-release control." *Id.* at 416. Thus, such a partial resentencing "restarted the

6

second or successive count." *Id.* Petitioner here does not attempt to file a second-in-time petition, but argues his resentencing restarted the clock for statute of limitations purposes. Indeed, applying similar reasoning, the Sixth Circuit held in *Crangle v. Kelly*, 838 F.3d 673, 678 (6th Cir. 2016), that a resentencing may amount to a new judgment AEDPA's one-year statute of limitations. However, for a resentencing to restart the statute of limitations clock, the new sentence must be worse than the old:

> While the entry of a new judgment does restart the one-year period for filing a habeas petition, a limited sentence modification that benefits a petitioner is not a new judgment. *Crangle v. Kelly*, 838 F.3d 673, 678 (6th Cir. 2016) (per curiam). Because the August 28, 2013, order did not impose "[a] new, worse-than-before sentence," it is not a new judgment that restarts the statute of limitations. *Id.*

*Martin v. Phillips*, 2018 WL 5623651, at *2 (6th Cir); *see also Cortez v. Warden Chillicothe Corr. Inst.*, 2018 WL 2382456, at *2 (6th Cir.) (denying certificate of appealability because "[e]ven assuming that Cortez did in fact receive a revised sentence removing his sex-offender designation, it would undoubtedly have been a benefit to him, as it had only the potential to remove requirements, not impose new restrictions on his liberty" and was therefore not "a new judgment for purposes of reviving the statute of limitations"); *Freeman v. Wainwright*, 2018 WL 4328005, at *2 (N.D. Ohio) ("Based on the clear mandate of *Cortez*, although Freeman undoubtedly received a new sentence in 2015, that sentence – which removed post-release controls from the sentence – was obviously one which was to the sole benefit to Freeman and added nothing that would create greater restrictions on his liberty. Thus, the limited, beneficial resentencing in 2015 did not serve to restart the one-year limitations period, which, as noted above, had long expired prior to Freeman's filing of his current petition in 2017."), *report and recommendation adopted by* 2018 WL 4305208.

As in *Freeman*, here Petitioner's new sentence (imposed in November 2015) was the same as his prior sentence, but simply removed the incorrect advisement of post-release control. *See* Ex. 8, Doc. 7-1, at 71. Thus, it was not a "worse-than-before" sentence, but rather, removed restrictions on Petitioner's liberty should he be released. As such, the undersigned finds this resentencing cannot serve to restart Petitioner's AEDPA statute of limitations.

Further, Petitioner filed nothing to toll the statute of limitations during its pendency. *See* Ex. 22, Doc. 7-1, at 147-50 (state court docket). His subsequent motions, filed in 2015, cannot serve to toll a statute of limitations that had already run. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not, however, revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.") (internal quotation and citation omitted).

As such, the Petition is time-barred unless Petitioner can show entitlement to a different start date, or a basis for equitable tolling.

### *§ 2244(d)(1)(D)*

Petitioner argues his Petition is timely under § 2244(d)(1)(D). *See* Doc. 1, at 9; Doc. 8, at 2. If this subsection applies, the statute of limitations on a habeas petition begins running on "the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence." § 2244(d)(1)(D). Respondent contends that even if this provision applies, the Petition is still untimely.

The Second Circuit has explained:

> Congress did not provide a definition of the term "factual predicate," as used in § 2244(d)(1)(D); ... Those courts that have given meaning to the term agree that a factual predicate consists only of the "vital facts" underlying the claim.... We agree. The facts vital to a habeas claim are those without which the claim would necessarily be dismissed under Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (requiring a district judge to dismiss a petition "[i]f it

8

> plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief") or Rule 12(b)(6) of the Federal Rules of Civil Procedure[.]

*Rivas v. Fischer*, 687 F.3d 514, 535 (2d. Cir. 2012) (internal citations omitted). And the Sixth Circuit has explained that "[N]ew information discovered 'that merely supports or strengthens a claim that could have been properly stated without the discovery is not a "factual predicate" for purposes of triggering the statute of limitations under § 2244(d)(1)(D).'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013) (quoting *Rivas*, 687 F.3d at 535).

Petitioner's sole habeas claim is that the trial court violated his Fifth Amendment right to due process when the trial court issued a journal entry on April 6, 2012 stating it "oppose[d] any reduction or modification of sentence by the Ohio Parole Board from that which was imposed." (Ex. 4, Doc. 7-1, at 7). The parties agree that at some later point, Petitioner was denied parole, though no date or documentation is provided. *See* Doc. 1, at 9 (asserting the "resultant Constitutional violation occurred in 2015"); Doc. 7, at 7 ("Following the denial of parole, Aquila filed a motion to withdraw his guilty plea.").

The undersigned finds that under the language of § 2244(d)(1)(D), and Petitioner's argument, the "factual predicate" of Petitioner's sole habeas claim is the trial court's April 6, 2012 journal entry. It provided the "vital facts" necessary to his current claim that the trial court's actions violated due process by improperly modifying his sentence. *See Rivas*, 687 F.3d at 535. The Parole Board's subsequent denial of parole, or the trial court's subsequent resentencing to remove post-release control do not change this analysis. The AEDPA clock under § 2244(d)(1)(D) therefore started the next business day (April 9, 2012); it then ran uninterrupted, and expired one year later on April 9, 2013. *See* Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000). Petitioner did not file anything to toll the statute of limitations during this period. *See* Exs. 22-24, Doc. 7-1, at 147-53 (docket sheets). And Petitioner's later-filed motions have no effect on a statute

9

of limitations which has already run. *Vroman*, 346 F.3d at 602. Thus, the Petition, filed over five years later (Doc. 1, at 10), is untimely even under § 2244(d)(1)(D). The undersigned therefore recommends the Petition be dismissed as untimely.[5]

### *Petitioner's Argument for a 2015 Start Date*

Petitioner contends the Petition is timely under § 2244(d)(1)(D) or equitable tolling. Specifically, he contends the factual predicate for his claim occurred sometime in 2015. The undersigned disagrees, as outlined above, but provides this alternative analysis of Petitioner's claim.

Preliminarily, and most importantly, Petitioner bears the burden of establishing a different start date under this subsection. *See Dicenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006) ("[T]he petitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim[.]"). Here, although Petitioner vaguely asserts that "the resultant Constitutional violation occurred in 2015" (Doc. 1, at 9), he offers no specific date on which he discovered (or could have discovered) this supposed factual predicate, nor identifies any triggering event. Because Petitioner has not satisfied his burden of establishing entitlement to a 2015 start date (or what that date should be), the Petition should be dismissed.

Even accepting *arguendo* (as Respondent seems to, *see* Doc. 7, at 7) that a date sometime in 2015[6] is the "date on which the factual predicate of the claim . . . could have been discovered",

---

5. The Court therefore need not here reach Petitioner's additional arguments regarding statutory and equitable tolling, *see* Doc. 8, at 3-4, because they are based upon events in 2017 and 2018, long after the statute of limitations expired.

6. Neither party identifies what specific date this might be, or what event (Resentencing? Denial of parole? Denial of the motion to withdraw guilty plea?) might have triggered it. For purposes of this alternative analysis, the undersigned assumes *arguendo* (in the light most favorable to Petitioner), that the date is no earlier than the date Petitioner filed his motion to withdraw guilty

28 U.S.C. § 2244(d)(1)(D), the undersigned agrees with Respondent, however, that the Petition remains untimely, for the reasons explained below.

A properly filed post-conviction petition can serve to toll the statute of limitations in habeas cases. 28 U.S.C. § 2244(d)(2). A state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, such as those prescribing the time limits for filing." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Here, following the denial of parole (on some unspecified date), Petitioner filed a motion to withdraw guilty plea in September 2015 (Ex. 5, Doc. 7-1, at 8-15), and timely appealed the denial of such to the Ohio Appellate Court (Ex. 12, Doc. 7-1, at 77-87), and ultimately the Ohio Supreme Court (Ex. 18, Doc. 7-1, at 121-22). The pendency of these proceedings would serve to toll the statute of limitations. *See* 28 U.S.C. § 2244(d)(2). However, the Ohio Supreme Court declined to accept jurisdiction on April 19, 2017. (Ex. 21, Doc. 7-1, at 146). Under this analysis, therefore, the statute of limitations then began running the following day (April 20, 2017), and expired one year later on April 20, 2018. *See* Fed R. Civ. P. 6(a); *Bronaugh*, 235 F.3d at 285. The Petition – filed May 7, 2018 – is thus still untimely under this alternative § 2244(d)(1)(D) analysis.

Petitioner argues he was entitled to an additional 90 days of tolling after the Ohio Supreme Court's decision (the time for filing a certiorari petition with the United States Supreme Court) pursuant to *Lawrence v. Florida*, 549 U.S. 327 (2007). (Doc. 8, at 3). *Lawrence*, however, distinguished between direct review and review of state post-conviction proceedings:

> Lawrence argues that § 2244(d)(2) should be construed to have the same meaning as § 2244(d)(1)(A), the trigger provision that determines when AEDPA's statute of limitations begins to run. But § 2244(d)(1)(A) uses much different language from

---

plea (September 10, 2015). *See* Ex. 5, Doc. 7-1, at 8. Even under this most favorable interpretation, the Petition remains time-barred as explained herein.

11

> § 2244(d)(2), referring to "the date on which the judgment became final by *the conclusion of direct review* or the expiration of the time for seeking such review." § 2244(d)(1)(A) (emphasis added). When interpreting similar language in § 2255, we explained that "direct review" has long included review by this Court. *Clay v. United States,* 537 U.S. 522, 527–528, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003). Indeed, we noted that "[t]he Courts of Appeals have uniformly interpreted 'direct review' in § 2244(d)(1)(A) to encompass review of a state conviction by this Court." *Id.,* at 528, n. 3, 123 S.Ct. 1072 (collecting cases). By contrast, § 2244(d)(2) refers exclusively to "*State* post-conviction or other collateral review," language not easily interpreted to include participation by a federal court.
>
> Furthermore, § 2244(d)(1)(A) refers to the "time for seeking" direct review, which includes review by this Court under *Clay*. By parity of reasoning, the "time for seeking" review of a state postconviction judgment arguably would include the period for filing a certiorari petition before this Court. However, § 2244(d)(2) makes no reference to the "time for seeking" review of a state postconviction court's judgment. Instead, it seeks to know when an application for "State ... review" is pending. The linguistic difference is not insignificant: When the state courts have issued a final judgment on a state application, it is no longer pending even if a prisoner has additional time for seeking review of that judgment through a petition for certiorari.

549 U.S. at 333–34. Therefore, the *Lawrence* Court held, "the filing of a petition for certiorari before this Court does not toll the statute of limitations under § 2244(d)(2)" for post-conviction proceedings. *Id.* at 337. Here, Petitioner sought post-conviction relief through a motion to withdraw his guilty plea, rather than a direct appeal challenge to his sentence. *See* Ex. 5, Doc. 7-1, at 8-15; Ex. 12, Doc. 7-1, at 77-87; Ex. 19, Doc. 7-1, at 124-35. Thus, any tolling ceased when the Ohio Supreme Court dismissed his appeal on April 19, 2017, and his AEDPA statute of limitations expired on April 20, 2018. *See Ru Liu v. Kelly*, 2012 WL 3112401, at *7 (N.D. Ohio) ("Petitioner was not entitled to the additional ninety days of tolling in order to seek a writ of certiorari in the United States Supreme Court because a motion to withdraw a guilty plea is part of collateral review, not direct review."), *report and recommendation adopted by* 2012 WL 3112397; *Brown v. Timmerman-Cooper*, 2011 WL 5966871, at *3 (N.D. Ohio) ("Here, the matter under review was a Motion to withdraw his guilty plea and to vacate or set aside judgment of conviction

12

or sentence—a collateral review measure. Therefore, Petitioner is not entitled to an additional 90 days after the dismissal by the Ohio Supreme Court."), *report and recommendation adopted by* 2011 WL 5966867.

*Equitable Tolling*

Therefore, even giving Petitioner the benefit of a later start date, the Petition remains untimely unless Petitioner can show an entitlement to equitable tolling.

Petitioner argues he is entitled to equitable tolling due to actions of his post-conviction counsel. (Doc. 8, at 3-4). Specifically, he contends that his post-conviction counsel advised that he would prepare and file a habeas Petition, and "it was not until April 30, 2018 that counsel suddenly dropped Petitioner and told him that counsel would not handle the habeas petition." (Doc. 8, at 3). He attaches letters from counsel. *See* Doc. 8-1.

Petitioner has the burden of establishing his entitlement to equitable tolling. *See Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003). To meet this burden, Petitioner must show that: 1) extraordinary circumstances prevented the filing of his petition, and 2) he was diligent in pursuing his case. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Equitable tolling should only be granted "sparingly". *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006).

The letters Petitioner attaches from his appointed state court counsel (who it appears he subsequently hired) state that counsel will research the viability of a federal habeas petition. (Doc. 8-1, at 3 (June 17, 2017); 4 (June 23, 2017); 5 (April 15, 2018)). On April 28, 2018, counsel wrote Petitioner a letter with research regarding a potential habeas petition (Doc. 8-1, at 6-12), and on April 30, 2018, told Petitioner he would not represent him because he did not believe he could prevail (Doc. 8-1, at 13). In both April letters, counsel informed Petitioner that the deadline for filing his habeas petition was (at the latest) July 2018. *See* Doc. 8-1, at 7 ("In theory, the timeframe

13

for you to file a Habeas petition expires on July 18, 2018. This date is one year after Ohio Supreme Court declined jurisdiction of your case plus the ninety-day timeframe in which you could have sought *certiorari* to the Supreme Court of the United States. There may be other issues with the timing of your petition, but those are discussed in-depth below."); Doc. 8-1, at 13 ("[P]lease be mindful of the July 18, 2018 deadline.").

Counsel, it thus appears, miscalculated the deadline for filing a habeas petition under the most generous interpretation of the AEDPA statute of limitations as it applies to Petitioner's case. However, as the Supreme Court explained, "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Holland*, 560 U.S. at 651-52; *see also Lawrence*, 549 U.S. at 336-37 ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."). By contrast, in *Maples v. Thomas*, the Supreme Court revisited the question of when attorney misconduct might rise to the level of "extraordinary circumstances beyond [a petitioner's] control", albeit in the context of what constitutes cause to excuse a state procedural bar to federal habeas relief. 565 U.S. 266, 283 (2012) (internal quotation omitted). In *Maples*, a habeas petitioner's two attorneys of record failed to notify Petitioner (or the court) that they could no longer represent him. *Id.* at 270. The Court held that this "abandonment" constituted cause to excuse his default. *Id.* at 283 ("We agree that, under agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him.").

Counsel here did not (as Petitioner alleges) "abandon" him. Rather, counsel represented he was retained to *research* the viability of a habeas petition, not that he would certainly file such a

14

petition on Petitioner's behalf. *See* Doc. 8-1, at 3 ("I will meet with your mother to discuss the details of retaining me to research the viability of a Federal Habeas Corpus Petition."); 4 ("I have included a fee agreement for the purpose of researching the viability of a Federal Habeas Corpus Petition and rendering an opinion regarding the same."); 5 ("I anticipate completing the research related to the viability of a Federal Habeas Corpus Petition and rendering an opinion for you in the very near future. At that time, I would like to arrange a telephone call wherein you and I can discuss whether to move forward with preparing and filing a Federal Habeas Corpus Petition."). And, in fact, counsel ultimately informed Petitioner that he would not represent him in habeas proceedings. (Doc. 8-1, at 13). Further, to the extent Petitioner relied upon counsel's miscalculation of the AEDPA statute of limitations, such a miscalculation does not rise to the level of extraordinary circumstances for equitable tolling. *Holland*, 560 U.S. at 651-52; *Lawrence*, 549 U.S. at 336-37.

## CONCLUSION AND RECOMMENDATION

In conclusion, the Petition is time-barred under 28 U.S.C. § 2244(d)(1)(A). It is also time-barred under 28 U.S.C. § 2244(d)(1)(D), as the "factual predicate" for Petitioner's claim is the trial court's April 6, 2012, journal entry. Finally, even assuming *arguendo* that the AEDPA statute of limitations did not begin to run until the Ohio Supreme Court dismissed the appeal of Petitioner's motion to withdraw guilty plea, the Petition is still untimely under § 2244(d)(1)(D), and Petitioner has not shown extraordinary circumstances entitling him to equitable tolling.[7]

---

7. A petitioner may also excuse the statute of limitations through a showing of actual innocence. A so-called gateway claim of actual innocence permits a federal habeas court to excuse the expiration of the statute of limitations and consider the merits of the petition. "In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins,* 133 S. Ct. 1924, 1931 (2013). Petitioner makes no such argument regarding his actual innocence of the underlying charges to which he pled guilty. As such, the miscarriage of justice / actual innocence exception is not at issue.

Following review, and for the reasons stated above, the Court recommends the Petition be dismissed as untimely filed.

s/James R. Knepp, II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).